## CONSOLIDATED ASSOCIATION *v.* J. L. WILSON.

By the omission to reinscribe a mortgage within ten years from the date of the first inscription, the effect of the inscription, and not of the mortgage itself, ceases.

Property banks were, by an Act of the Legislature, passed in 1842, relieved from the necessity of reinscribing mortgages in their favor. By an Act passed in 1843, any person having an interest, was authorized to cause to be cancelled on the books of the Recorder, all mortgages, the inscription of which, had continued more than ten years. This Act did not apply to mortgages made in favor of property banks, and the proviso applied not only to all stock mortgages executed in favor of property banks, or made directly to them, but also to all such mortgages as said banks had acquired by subrogation.

When the rate of interest is not specified in a note given to a bank, it will bear the rate of interest fixed in the charter.

C. C. 3333.

APPEAL from the District Court of Ouachita, *Sharp*, J.

*McGuire & Ray*, for plaintiff and appellant:

I.—Plaintiffs contend that their mortgage was so recorded and reinscribed as to give it effect against third persons as required by law.

1st. The original mortgage to the bank was recorded on the 24th June, 1829, p. 13.

2d. After the death of *Ferdinand Morgan*, in an act of partition between his heirs and the widow, on the 6th December, 1831, the land mortgaged to plaintiff was sold to or taken by Mrs. *Hannah S. Morgan*, the widow, who assumed to pay the whole of the debt to plaintiff, p. 21, which deed and mortgage were recorded in the mortgage office, on the 6th December, 1831, p. 22.

3d. After the death of *Hannah S. Morgan*, upon due legal proceedings, contained on pages from 23 to 33, *Jonathan Morgan* purchased the land mortgaged to plaintiff on the 17th November, 1832, pp. 31 to 33, and retained, out of the price, an amount sufficient to pay plaintiff's debt, and assumed the payment of plaintiff's debt, which deed and assumption were regularly recorded in the mortgage office, on the 1st December, 1832, p. 33.

4th. By an Act of the Legislature, approved March 11th, 1842, p. 232, it is provided—

"That the rule requiring the reinscription of mortgages at the expiration of ten years from the date of their registry, shall not apply to the mortgages which have been or may be given by the stockholders of the various property banks of this State."

The original mortgage of *F. Morgan*, and his wife, *Hannah S.*, to plaintiff, was duly recorded on the 24th June, 1829, according to the requirements of Art. 3331, of the C. C. This mortgage, in extenso, was never reinscribed. But on the 6th December, 1831, p. 22, a deed executed by the heirs of *F. Morgan* to *Hannah S.*, his widow, of a tract of 800 arpents, including the land mortgaged to plaintiff, p. 20, and in which deed the widow assumed to pay plaintiff's debt, the amount of which was specified, p. 21, was recorded in the mortgage office.

*Hannah S.*, widow *Morgan*, having died, at a Probate sale of her property on the 17th November, 1832, p. 31, *Jonathan Morgan* became the purchaser of said 800 arpents, including the land mortgaged to plaintiff, and reserved in his hands, out of the amount of his bid for said land, the amount of plaintiff's claim, and assumed the payment thereof, pp. 31, 32, which deed was duly recorded in the mortgage office on the 1st December, 1832, p. 33.

Both the above acts contain a perfect description of the land mortgaged, of the debt for which it was mortgaged, of the individuals owing the debt, and of the corporation to which the debt was due.

The mortgage Records from the 1st December, 1832, exhibited clearly and without occasion to refer to anterior records of any kind, the existence of plaintiff's mortgage on said tract of land, and had the Recorder of Mortgages been required to make out a certificate of mortgages at any time within ten years subsequent to the 1st December, 1832, he would have been bound to include plaintiff's mortgage.

This is a compliance with the Article 3333, of the C. C., according to the rule settled in the case of *Bonnafe* v. *Lane*, 5 An. 227; *Ellis* v. *Sims*, 2 An. 254; *Shepherd* v. *N. O. Cotton Press*, 2 An. 113; *Hyde* v. *Bennett*, 2 An. 300; Succession of *Falconer*, 4 R. 5.

The public had all the notice that the public records could be made to afford, and no one by consulting them for ten years subsequent to December 1st, 1832, could have failed to have been made thoroughly acquainted with plaintiff's mortgage.

If the above amounted, in law, to a reinscription of plaintiff's mortgage, then no further reinscription was necessary, as the Act of 11th March, 1842, p. 232, dispensed with it.

II.—*Hannah S. Morgan*, who was one of the original mortgagors and debtors, *in solido*, to plaintiff, in the transfer of the land to her by the heirs of *F. Morgan*, assumed to pay the debt to plaintiff, pp. 20, 21. *Jonathan Morgan*, in his purchase of the 17th November, 1832, of the land mortgaged to plaintiff, also assumed to pay the debt to plaintiff, pp. 31 to 33—both these acts were recorded in the mortgage office, respectively, on the 6th December, 1831, and 1st December, 1832, as before stated.

Both those acts create in favor of plaintiffs a new mortgage on the same land originally mortgaged to secure their claim, as well as the individual indebtedness of said *Jonathan Morgan;* it also operates against *Jonathan Morgan*, as a vendor's privilege, as the payment of plaintiff's debt was part of the consideration of his purchase : *Dupuy* v. *Dashiell*, 17 L. 60; 7 R. 44; 6 N. S. 716. It was not necessary that plaintiff should have formally accepted these mortgages : *Scott* v. *Featherston*, 5 An. 306. Plaintiff has a right of action : C. P. 35.

Ten years had not expired from the recording of the deed to *Jonathan Morgan*, December 1st, 1832, until the passage of the Act of the 11th March, 1842, p. 232, which dispensed with reinscriptions of mortgages to property banks, given by stockholders. This mortgage comes within the true spirit and intention of that act.

*Jonathan Morgan* died in 1846, and under an order of the Court of Probates this land was sold at public sale on the 3d June, 1848, and purchased by *John L. Wilson*, defendant, who paid for it, as stated in the deed to him, by a receipt of his wife, *Narcissa Jane Morgan*, defendant, to the executor, for the amount of his bid, as so much coming to her as heir of said *J. Morgan*, pp. 34, 35. In this deed, p. 35, the Sheriff transfers this property to said *Wilson* "without any reservation of mortgage," stating in the deed that the same was mortgaged to the plaintiff—which deed is signed by *Wilson*, defendant, and the certificate of mortgages is waived.

This brings home to *Wilson*, defendant, a knowledge, of the existence of the

mortgages in favor of plaintiff at the time of his purchase, which is equivalent <span style="font-variant:small-caps">Consolidat. Ass.</span>
to a recording or reinscription of plaintiff's mortgage so far as to hold *Wilson* <span style="font-variant:small-caps">Wilson.</span>
liable for the amount. *Parker* v. *Walden*, 6 N. S. 716; *Noble* v. *Cooper*, 7 R.
44. The effect of the actual knowledge of an existing mortgage or title is
fully stated in the case of *Robinett* v. *Compton*, 2 An. 854, to be equivalent to
registry. *Rachel* v. *Normand*, 6 R. 88; 8 N. S. 140; id. 246. *Wilson*, de-
fendant, having knowledge of the existence of plaintiff's mortgage, was pre-
sumed to know the law, that such mortgages were not required to be rein-
scribed to have effect against third persons, according to the Acts of 11th
March, 1842, p. 232, and 27th March, 1843, p. 52.

*Simon*, on the same side:

Our jurisprudence is full of cases in which 'the *pact de non alienando* was
brought under the consideration of our supreme tribunal who has uniformly
given to such a pact, the force and effect which, from the terms of their con-
tract, the parties intended it should have. The purport of all the decisions on
the subject has always been in substance, as lately held by this Court in posi-
tive terms, *Stanbrough* v. *McCall*, 2 An. 325: "that a party holding under a
mortgage, and well acquainted with his title, is estopped by the pact *de non alie-
nando* from claiming a better condition than his author, and from pleading an
exception which the latter could not plead." In the case of *Nathan* v. *Lee*, 2
N. S. 33, which is the first case in which the question was ever presented,
Judge *Martin* said: "A mortgage creditor who acts on a mortgage, which con-
tains in his favor an agreement of the debtor, not to alienate, is not bound to
pursue a third possessor by the action of mortgage, but may have the hypo-
thecated property seized in *via executiva*, as if no change had taken place in
its possessors; because any alienation or transfer made in violation of the pact
*non alienando*, is *ipso jure* void, as it relates to the creditor." And further:
"The remedy is different when the mortgagor has expressly covenanted that
he will not alienate, unless we should consider such a pact as entirely nugatory
and unavailing; which would be contrary to a fundamental reason in the con-
struction of contracts and statutes, i. e, that full effect should be given to all
those provisions, whenever it can be done without falling into absurdity."
So it was universally held in all the subsequent cases on the same subject:
*Donaldson* v. *Maurin*, 1 L. R. 39; 13 L. R. 314; 15 L. R. 267; Ibid. 471; 19 L. 491;
2 R. R. 378; 10 R. R. 54: until, in the case of *Stanbrough* v. *McCall*, 2 An. 325,
the doctrine, after a careful review of most of the previous decisions, under-
went a very able and thorough re-examination, and the Court adopted the
same views to a still broader extent than it had done before; the principles
recognized in the former jurisprudence were strictly adhered to, and especially
those maintained in the case of *Donaldson* v. *Maurin*, 1 L. R. 39, in which the
Court considered the effect of such a pact, as springing not from legislation
but from the agreement of the parties. "It is an universal principle," says,
Judge *Matthews*, "founded in reason and law, that effect must be given to all
the parts of a written contract or agreement, and meaning to all its stipulations.
and phrases, unless such a construction leads to absurdity. It is also a gene-
ral rule that owners of property must be presumed to know the titles and the
incumbrances under which they hold it."

*Garrett*, for defendant:

It is true that our jurisprudence as now established, differs in some respects,
from the earlier decisions on the subject of mortgages. Thus, it had been de-
cided, in direct opposition to Art. 3316, that mortgages ceased to have effect,
"with regard to the contracting parties themselves," if not registered for ten
years after the date of the contract, or if not reinscribed within ten years af-
ter the first registry. 6 Rob. 170; Ibid 421. And, in opposition to the entire
policy of our registry laws, it was held that notice brought home to a purcha-
ser is equivalent to registry. But it is now well settled that there is no con-
flict in these different provisions of our Code; and that the spirit and policy of
our laws indicate an entire and consistent system on this subject, by which be-
tween the contracting parties the obligation of the accessory contract of mort-
gage has its birth at the time the written act is signed, and continues to live
as long as the debt or principal obligation which it was intended to secure.
But against third persons, it is the registry of the mortgage which gives it ef-
fect. "The inscription is in fact the mortgage. It must be renewed at certain,

75

CONSOLIDAT. ASS.
v.
WILSON.

fixed periods, and the non-reinscription may be opposed by all third persons having an adverse interest, although they may be charged with notice." 2 An. 110; Ibid. 523.

In the leading case of *Shepherd* v. *The Orleans Cotton Press Company*, 2 An. 110, in which actual notice was brought home to the parties, (the anterior mortgages being set forth in the subsequent act of mortgage in favor of those charged with notice,) this question was fully considered. Since then the decisions of this Court have been in accordance with the principles laid down in that case. See *Lataste* v. *Beraud*, 2 An. 768; 2 An. 523; *Hyde* v. *Bennett*, 2 An. 799. And in *Bronin* v. *Durand*, relied on by plaintiff: "The failure to reinscribe would, in ordinary cases, be fatal as to third persons, but leaves the mortgage unimpared as between the mortgagor and mortgagee." 2 An. 778. "The inscription is exclusively in the power of the party having an interest to make it. If he does not reinscribe, he cannot complain of losses sustained through his own neglect. The construction contended for by the appellants would make, in all cases, of the effect of inscription a matter *en pais*, and therefore uncertain, and would give rise to endless ligitation." 2 An. 113.

"If the public record is considered as the sole standard by which those rights are to be determined, the community can always know with certainty what conventional or judicial mortgages exist on a man's property and can deal with him securely." *Adle* v. *Anty*, 5 An. 633.

Even the notice brought home by a suit to enforce the mortgage does not prevent the pre-emption of the mortgage. 5 An. 634; 2 An. 111; Ibid, 523; Ibid, 800; 4 An. 396.

VOORHIES, J. The plaintiffs seek to enforce their mortgage on a tract of land in possession of the defendants.

*John L. Wilson* avers that he acquired this land, by purchase, at a sale of the succession of the late *Jonathan Morgan*, in the year 1848, free from all incumbrances; that if the plaintiffs ever held any mortgage on it, it ceased to be operative on the 24th June, 1839, ten years after its inscription, in the office of the Recorder of mortgages, without having been reinscribed.

*Ferdinand Morgan* having become a stockholder in the Consolidated Association of the Planters of Louisiana, for the sum of $8000, equal to sixteen shares, executed a mortgage to secure the same on a tract of land, described as having a front of six arpents, on each side of the bayou de Siard, with the ordinary depth of forty arpents, on each side of said bayou, and also ten slaves. In the act of mortgage, inscribed in the office of the Recorder of mortgages, on the 24th June, 1829, it is stipulated as follows, viz:

"And the said appearers, wishing to make use of the credit granted them by the sixth Section of said first recited legislative Act, they have applied to the said President, Directors and Co., in order to obtain, as in fact they have obtained, a loan of $4,000, &c.; therefore, the said appearers (the mortgagor and his wife, *Hannah S. Tennelle*,) promise and bind themselves, *in solido*, to reimburse the said sum of $4,000, on the 24th day of June, 1830, fixed, for which purpose they have produced an obligation or bond of $4,000, subscribed this day by them, jointly and *in solido*, payable on the said 24th day of June, 1830, fixed, to the said President, Directors and Co., which obligation or bond was signed *Ne Varietur*, by the undersigned, Parish Judge, agreeably to law, &c. &c."

*Ferdinand Morgan* having died intestate, without leaving either descendants or ascendants, his succession passed to his collateral relations. In the partition between his widow and heirs, made on the 25th of June, 1831, each of the parties stipulated to pay one-half of the passive debts of the community, among which was that of the plaintiffs, "for the sum of $3,700, or thereabout." The stock was equally divided between the two parties. The act recites:

"And now for the faithful and punctual payment of the aforesaid debts, each party for his half, the parties to the agreement, do by these presents mortgage the one party to the other party, each their undivided half of a certain tract or parcel of land, on the bayou de Siard, containing 880 acres, whereon the decedent last resided, the same forming a part of said succession, and owned in common by the parties to this agreement, and undivided. It being here understood that said land is to be divided hereafter, and that the one-seventh part of 480 acres of said tract of land, is the exclusive property of the said Mrs. *Hannah Morgan*, party of the first part."

On the 6th of December, 1831, the heirs conveyed all their interest in his property to the widow *Morgan*, who stipulated to pay as part of the price the plaintiff's claim. The deed of conveyance recites: "Which said sum, the said Mrs. *Hannah Morgan* is bound to pay by this instrument, and the parties of the first part absolutely refuse to warrant the land herein sold against said mortgage, the same having been explained to the said Mrs. *Hannah Morgan*, she hereby acknowledging herself to be acquainted with the same, accepts this deed as such, under these circumstances." This act was inscribed at the time of its date, in the office of the Recorder of mortgages. The mortgage stipulated by the widow in this Act, in favor of the heirs of *Ferdinand Morgan*, deceased, was cancelled by the latter on the 27th March, 1833, after the death of the former, whose succession was opened in 1832. She, also, died intestate, without issue. At the sale of her succession, on the 17th of November, 1832, *Jonathan Morgan*, purchased the land in question, for the price of $9,600. In the conveyance to him, it is stipulated as follows: "The one-fourth to be paid in cash, the balance to be paid in one, two and three years, in equal annual instalments, after deducting an amount due the Consolidated Association of the Planters of Louisiana, and an amount due the heirs and legal representatives of General *Ferdinand Morgan*, deceased, as also the amount set apart by a partition, as made by experts, appointed by the Hon. the Court of Probates, to partition the estate of Mrs. *Hannah S. Morgan*, deceased, among the heirs and legal representatives of said decedent, to the children of *Jonathan Morgan*, issue by his marriage with *Rachel Julia St. Clair Tennell*, sister of said decedent, after the deductions as aforesaid, leaving the said purchaser indebted to the heirs and legal representatives of *Hannah S. Morgan*, including his children as co-heirs, in the sum of $4,656." This conveyance was inscribed in the office of mortgages on the 1st of December, 1832. The following clause is inserted in the partition referred to: "*Jonathan Morgan* having purchased the land for $9,600, payable one-fourth cash, and the balance in three equal annual instalments, after deducting the amount of $3,392, for which said land is mortgaged to the Consolidated Association Bank, leaves the sum payable annually by said *Jonathan Morgan*, of $1,552, of which sum he is entitled as the representative of his children to the one-sixth part of each payment." At the judicial sale of the estate of the late *Jonathan Morgan*, on the 3d Jan. 1848, *John L. Wilson*, one of the defendants, purchased the property for the price of $10,000. The deed of conveyance, after stating that the purchaser had complied with the terms of the sale, to the satisfaction of the executor, recites: "It is further understood by the purchaser that the above property is mortgaged to the Consolidated Association of the Planters of Louisiana, for the sum of $4,000 for stock, and the production of the certificate of mortgages, is hereby waived, the estate being liable for any liability thereon."

It is urged by the defendants that the mortgage executed by *Ferdinand Morgan*, does not cover the loan made to him, pursuant to the credit to which he was entitled as a stockholder. We consider this question as settled in the case of *Bouin, et al.* v. *Durand*, 2 An. 778.

It is also urged that the plaintiffs' mortgage is lost by pre-emption. In the case of *Shepherd* v. *The Orleans Cotton Press Company*, 2 An. 118, the Court said : " We do not understand Art. 3333 as providing for the prescription of mortgages, but, on the contrary, as recognizing the right of reinscription, after the expiration of ten years. The French side of the Article clearly expresses the intention of the Legislature. It is the effect of the inscription that ceases, not the effect of the mortgage. If the prescription of the mortgage had been intended, it would have been so expressed.

By the Legislative Act of 1842, the property banks were exempted from the necessity of reinscribing mortgages in their favor. Session Acts ·of 1842, p. 282. Under the Act of 1843, any person having an interest was authorized to cause to be cancelled, on the books of the Recorder, all mortgages, the inscription of which had continued more than ten years, provided, however, it did not apply to mortgages against husbands, &c., " nor to such mortgages in favor of the property banks." Acts of 1843, p. 61. It was held in the case of the Improvement and Banking Company, 4 An. 473, that this proviso not only applied to stock mortgages executed in favor of property banks, or made directly to them, but also to all such mortgages as said banks had acquired by subrogation. " It is doing no violence to language," the Court remarked, " to consider all mortgages owned by them as mortgages in their favor, under the statute, without reference to the manner in which they have been acquired." Under the provisions of these statutes, as construed by our predecessors, it is evident that the mortgage executed in favor of the plaintiffs by *F. Morgan*, as stockholder, never ceased to have its effect or to be operative. It can hardly be contended that his stock loan, constituting one of the principal obligations covered by the mortgage, is extinguished by prescription. The partial payments endorsed on the bond from time to time, (one of which for $1,955 on the 11th of November, 1843) would operate as an interruption. 3 An. 552. Moreover, *Jonathan Morgan* not only purchased the property previous to the time required for pre-emption, but in the conveyance to him expressly recognized the mortgage, and retained in his hand the plaintiffs' claim as a part of the price or consideration. It is clear, therefore, that he cannot be considered as a third possessor without notice ; moreover, the original act of mortgage contains the *pact de non alienando*. It is equally clear that the mortgage continued to have its effect, or to be operative, whilst the property was still in his possession, under the Act of 1842 ; and his vendee, *John L. Wilson*, must be viewed as standing in the same position towards the bank, having in the conveyance to him, fully recognized the existence of the stock mortgage. The only difference between *Wilson's* conveyance and that of *Jonathan Morgan* is, that the former recognized, but did not retain the amount of the plaintiffs' claim, as part of the price.

The position assumed by the appellee, that interest is only due from judicial demand, is untenable. The proviso, to the sixth Section of the Act of incorporation referred to in the mortgage, prescribes, " that when they (the stock holders) shall intend to make use of said credit, they shall pay the interest for it at the rate that shall be fixed for the loans," &c. The eleventh fundament-

al rule, in the twelfth section, provides, that, "the corporation shall not take more than eight per cent. per annum, on notes discounted or money lent out," &c. It was decided in the case of *The Consolidated Association* v. *Foucher*, 9 L. 478, that in notes given to banks, if no rate of interest be specified, it will be inferred that the contract was made in reference to the Charter, and governed by the rate of interest fixed therein. See 17th Section of the Charter, and 12th rule, established in accordance therewith, on the 9th of July, 1827. The statement annexed to the plaintiffs' petition, shows the amount due on the stock note on the 11th November, 1843, to be $2,188, and a payment made on account thereof of $633 01, on the 11th November, 1847.

There is no evidence in the record in support of the claim set up by the plaintiffs' for an annual contribution of six dollars per share on the stock. As to this claim, we think justice requires that the plaintiffs' rights should be reserved.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed, that the plaintiffs have judgment recognizing their right of mortgage on the property described in their petition for the sum of two thousand one hundred and eighty-eight dollars,with eight per cent. per annum interest thereon, from the 11th of November, 1843, until paid, subject to a credit of six hundred and thirty-three 01-100 dollars, paid on the 11th of November, 1847, and if said balance and interest be not paid within ten days after notice of this decree to the defendants, then said property shall be seized and sold according to law, to satisfy the same; it is further ordered, that in relation to the claim set up by the plaintiffs for contribution on stock, there be judgment against them as in case of nonsuit, the appellees to pay the costs of both courts.